Good morning to all of you. We are ready for oral argument in a couple of cases here this morning. The first case is First Financial Insurance Company v. Tonya Brumbaugh. And we are ready, Mr. Barrow, to hear from you. Good morning. Good morning, Mr. Barrow. Good morning. Good morning. May it please the Court. I'm Mark Barrow, and I represent the appellate First Financial Insurance Company. This case should be reversed because the trial court's order requiring First Financial to do something that is prohibited by the statutory law of South Carolina and the policy provisions that are in issue to transfer Gary Deneau's policy, an individual policy, to Steve English requires then the cancellation of Mr. Deneau's policy. That couldn't be accomplished for several reasons. First, it would be an abrogation of existing South Carolina law. The particular statute in question, often referred to as the insurance cancellation statute, is codified in South Carolina Code Section 3875.7.30. That code section lists five requirements for the cancellation of a policy. None of those requirements were met. But under the right circumstances, if it's your position you couldn't cancel it, you could have notified Mr. English that he didn't have coverage, couldn't you? We could have notified English. The question arises, though, A, did we know that Mr. English assumed he had coverage? B— Didn't your witness say just that? Didn't your witness say that under the circumstances that English applied, it was reasonable for English to believe he had continuing coverage up until the 23rd? In fact, Mr. Dent did testify to that, Your Honor. If he says that, so—and that is his testimony. I appreciate you referring to that. If he says that, what are we to do with the fact that your company says somebody has applied for insurance to us, we think it's reasonable for him to think he has current coverage, but we know he does not? Doesn't that put some obligation on you to act? No, sir, it doesn't under South Carolina law. And that's—I think the seminal question in this case is, did the court correctly apply the law of equitable estoppel in transferring the policy? And getting back to the question that was posed— Well, I say this, the seminal question I want you to answer is, why doesn't that put an obligation on you? Because under the law, we had no obligation to act, because under the policy itself, we could not have transferred it, understandably. I know, but you could have said you don't have coverage. We know you think you have coverage, but you do not have coverage. Well, that— How can you have done that? That would require a duty on our part to speak. I know I'm asking, why isn't one created? When you know somebody applying for insurance, you think they're reasonable in thinking they have insurance, but you know what they don't know, which is they do not have insurance with you. Don't you have some obligation to tell them something? No, sir, we don't. Could we assume for a moment that you did, just assume for purposes of my question, that you did? What is the authority for extending that obligation to a third party? Having a third party rely on that? Are you aware of any authority for the proposition that equitable estoppel extends to a third party? I am not. And I have a couple of other questions, if I may. One is, jurisdictionally, if Brombaugh wins the tort action, were to win the underlying tort action, could a direct action for indemnification be brought against you under South Carolina law? We don't think that's possible. Well, then what's the case—what do we have jurisdiction to decide? What's in front of us? Well, that's a good question, as we raised in our brief, whether or not this was in fact, whether or not Brombaugh had standing to pursue this action at this time before this court. We, of course, named Brombaugh in our declaratory judgment action really out of judicial economy, if you will, because we knew that at some point later there's some potential under the federal declaratory judgment action that she might bring declaratory judgment action. Now, we would still argue at that time that she didn't have standing, didn't have a right. But in any event, we included her as a named party in the DJ. But as our brief argues, we submit that she doesn't have standing in this action. And your authority for that is? It is cited in the brief, Your Honor, with a litany of cases, primarily in South Carolina law, that as we're sitting in diversity jurisdiction applying South Carolina law, that there's no direct right of action against the insurance carrier. And I have one more question. Equitable estoppel is an affirmative defense, is it not? It is. Is it customary to have a court raise it sua sponte? It is not. I've never experienced that. I've been practicing for 27 years. But in addition to the fact that we respectfully submit it shouldn't have been raised sua sponte because it turns it into a counterclaim, it also turns it into, in this case, an offensive weapon, which is clearly against South Carolina law. As stated in our brief, it's only a shield. It cannot be used as a sword. But to turn it for the court to raise it sua sponte after finding that the insurance policy did not apply and then reaching out and grabbing the cursory pleading of Mrs. Brumball, which was an affirmative defense, and say because of this doctrine we're going to transfer Mr. Deneau's policy to Mr. English that thus allows Mrs. Brumball to collect the proceeds from that policy results in a financial gain for Mrs. Brumball, that is specifically what the case law says you cannot do. If in fact, if in fact, just hypothetical, everybody agreed that the circumstances in the case allowed that this Mr. English did in fact have equitable estoppel against the insurance company. You got that? Did not or did? Did. Okay. He had it. Then he had a wreck in which he killed Mrs. Brumball's mother. You don't think South Carolina would allow the victim to assert his equitable estoppel against the insurance company? I don't think so. You couldn't depose him. You couldn't talk to him. But the facts, the facts of my hypothetical are without question, everybody agrees under the facts as he dealt with the insurance company, he would have equitable estoppel. You think South Carolina would not let Brumball recover under that policy? I don't think because I think that's offensive. That results in a financial gain. That's not just the defensive use of equitable estoppel. That's the offensive use. Again. But he would be able, would he be able to assert it had he lived? Would English be able to under those facts be able to assert equitable estoppel? If facts were he had equitable estoppel. I don't think English can assert equitable estoppel. But I guess the court's question is if, in fact, English had the policy or did English have equitable estoppel? No, English had equitable estoppel against the insurance company. I don't think under the case law he could do that. Well, I think the question is assume for purposes, which is essentially my question, assume for purposes of the question that he did. Let's go back and look at South Carolina law. What are the elements of equitable estoppel under South Carolina law as applied to Ms. Brumbaugh? Right, right. Well, under South Carolina law, the party seeking estoppel must indicate and show that they've been harmed by some erroneous misrepresentation. Well, there has to be lack of knowledge as to the truth of the facts in question. Correct. There has to be reliance on the conduct of the party estoppel. Right? Correct. And there has to be a prejudicial change of position in reliance on the conduct of the party estoppel. How do those factors apply here, play out here? Thank you. Leigh Ann Wise, according to the lower court, Leigh Ann Wise sends a fax of May 2nd, which is the linchpin of the lower court's decision. In that fax, Ms. Wise says, well, Gary Deneau has left the business. Okay. My question deals with Ms. Brumbaugh, not Mr. English. Okay. All right. Thank you. Ms. Brumbaugh did not rely upon anything from First Financial or Steve English. Ms. Brumbaugh knew nothing about First Financial or J&J. Ms. Brumbaugh had no communication with them. Ms. Brumbaugh did not change any position based upon detrimental reliance upon anything that First Financial or J&J did or did not do. Their silence, as raised by the court, had no—Ms. Brumbaugh did not have any knowledge of it, did not change a position based on it. But she's not asserting that she did that independent of English, is she? She's not asserting that. She's not asserting that independently she dealt with the insurance company. She's not asserting that, is she? She is not asserting that. Yeah. So in the—a couple of lynchpins. One would be whether or not she would sort of have standing as a third party to assert English's rights. Correct. And I'm asking—and I don't want to step on Judge Dunford's question. No, no, no. Is that okay? Go right ahead. Yeah. But I'm saying if we could agree that English had the right of equitable estoppel, would that have— under South Carolina law, if he had equitable estoppel, would that have given him insurance coverage, if he made out a case of equitable estoppel? You talk about offensive and defensive. Would that have allowed him to have insurance coverage under that policy? I don't think it would. Then what good is equitable estoppel in an insurance case? I submit to the court it probably is not. I don't think it should have been raised as affirmative defense. You think the Supreme Court in South Carolina would say that in the appropriate case where everybody agrees that it sure looks like equitable estoppel, that an insurance company, let's say, misrepresented to the reported insured, made him think he did it. He met all the other elements. The Supreme Court would go, that's fine, but you can't use equitable estoppel to establish coverage? You think that's the law in South Carolina? I mean, you take what you want to. You think that's the law in South Carolina? I think potentially under those circumstances the Supreme Court may reach out and say, now wait a minute, insurance company, you made an intentional misrepresentation. There's reliance upon that misrepresentation. There's a change of position pursuant to that misrepresentation. Facts don't matter so much as your legal conclusion. Now your legal conclusion is you do think then that South Carolina might well say there are circumstances in which equitable estoppel would lead to insurance coverage for the named insured. Yes or no? Potentially. Are you aware of any cases in South Carolina that use the doctrine of equitable estoppel in a situation other than preventing a forfeiture under an insurance policy? In other words, to allow coverage where there has never been coverage. I know of no cases. None. There's a fair amount of authority for the proposition, in fact, is there not, that a court can't apply equitable estoppel to expand coverage under the policy? They cannot. The case we've cited in our brief, which I think is applicable here, is Liberty Mutual versus West Point. In that case, of course, Judge Duffy indicated that there are only two exceptions to that rule, Judge Duncan, that the party seeking estoppel must be harmed or prejudiced by misrepresentation and that the party seeking estoppel didn't have the means to discover the truth. In essence, South Carolina courts hold that you cannot expand coverage under that doctrine unless one of those two exceptions are met. And I believe the district court found that there was no coverage absent the doctrine of equitable estoppel. In fact, it did. In fact, it did. We submit that at that point, that the district court found that there was no coverage, that should have been the end of the case. That you didn't need to go any further and have a separate trial on the doctrine of equitable estoppel. And, in fact, the court then finds that we're stopped because of silence. Well, when you look at South Carolina law, which defines the doctrine of equitable estoppel by silence, it lists three criteria which aren't met. One is the duty. The second, of course, is that they didn't have the means of acquiring the truth. The third, again, there was a change in position. That doesn't fit the facts of this case. Equitable estoppel by silence would not apply as well. There's no case exactly on point with this one, is there? Exactly on point with the third parties attempting to take coverage where there's an insurance company says it's reasonable for the insurer to think they were covered. Not that I'm aware of. Would you want us to certify this very question I'm asking you to the state supreme court and see what they would say about that? I don't think it needs to be certified. Would you want to argue that to the state supreme court? I am perfectly comfortable with the law of South Carolina. Would you want to argue that to the state supreme court on this question? I'm perfectly comfortable staying before this tribunal. We appreciate the compliment. Well, it just strikes me that under South Carolina where the law is, and you do a lot of practice in South Carolina, a very good lawyer. Yes, sir. And, you know, South Carolina's stated case in the law is to find coverage, insurance coverage, if coverage can be found basically. Don't you agree with that? I've heard that rumor from time to time. And you see it in their cases. But this is, I'm going to go back to the nub of the question. We can talk about whether or not Rumbaugh has standing to assert. That might be a question that the supreme court would like to deal with, too. But it's difficult for me to believe, no matter what the cases we talk about now, because you know how South Carolina does it. They just, they'll rule based on a set of facts. You can't always glean other, that they'll follow that in the next case because they always have some reason why those cases didn't narrow what they've done in the subsequent case. But in a case where an insured can make out the case that the insurance company did something under which, oh, it's reasonable under the circumstances for the insured to believe he was covered, and the insurance company says yes. It's reasonable for him to think he has coverage. But you know what? He didn't have it. We knew he didn't have it, but we're not going to tell him. And then to have somebody injured in that situation, I would be startled if the supreme court didn't give very serious thought to saying there was coverage in that case. Briefly. Yes. We don't adhere to the doctrine of reasonable expectations. The question posed to Mr. Dent is based, in my opinion, on that doctrine, and South Carolina does not follow that doctrine. Secondly, regardless of Mr. Dent saying it's reasonable to assume that he had coverage, and Mr. Dent did testify he had no idea what English assumed, and in fact there's nothing in the record about Mr. English. But he said it was reasonable. He said it was reasonable for him to assume that, but he doesn't know that. But that goes to the heart of reasonable expectation, which we do not adhere to. But secondly, there's no evidence in the record that based on this facts of May 2nd that we misrepresented anything. No question was asked of us. It was a new act. My question didn't say you misrepresented anything. It's failure to say something was the point of my question. Right. But that's equitable estoppel by silence. And first there has to be a duty. You've answered that, and you saved some time, Mr. Bowne. Thank you. Thank you very much. Thank you. Mr. McLeod. May it please the members of the court. I'm Mullins McLeod, and I represent the injured party in this particular case. And if it pleases the court, I'd like to go through the arguments raised in the order in the brief. And, of course, any questions? Why don't you just explain, if you will, why you think that your client has standing to assert whatever rights Mr. English would have under the policy in this procedural situation, and why you think Mr. English would have any right to assert he had coverage? I will, Your Honor. And then also in doing that, if you would address the anti-transfer provision in the policy that says it cannot be transferred without the written consent of the company. I will. And thank you for those questions. First off, as pointed out in our brief, the issue with an injured party in an insurance company, whether or not there's a case in controversy, we cited the Maryland Casualty Company opinion, which is a U.S. Supreme Court opinion dated 1941, in which the U.S. Supreme Court held that the injured party, although they're not in privy of contract, they do nonetheless have a case in controversy with regard to the coverage. And that opinion was followed, and we cited it in our brief. Has it been followed under South Carolina law because we're sitting in diversity? It is. I'm asking, and it was very unclear to me. I mean, I understand that that is generally the case. But specifically, would Ms. Brumbaugh be able to sue First Financial, maintain an action against First Financial now that Mr. English has, now that Wholesale has defaulted? Under South Carolina law, the doctrine of equitable estoppel is flexible in nature. And, yes, the injured party, Ms. Brumbaugh, would be able to assert equitable estoppel in this context. That wasn't my question. My question was can Ms. Brumbaugh bring an action for indemnification against, can recover indemnification in the circumstance where Mr. English has defaulted? Can they bring an action against First Financial? There are two instances where that can occur under South Carolina law. One is where there's an assignment. And the other is when. He wasn't here. Correct. And the other is when there are limited cases where third-party beneficiaries can, under South Carolina law, do exactly what your question is. Because, as I understood it, because where there was a misrepresentation? What the, just. The two exceptions, those are the two exceptions, I believe. Yes. And the way to think about how there's no way that what the insurance carrier is arguing in this case comports with South Carolina law because of the following reasons. Say Chad Kessing was the at-fault driver. He was the employee of Wholesale Transmissions. He was a named insured under policy. There's no question about that. As well as other employees at the business. If you accept what the insurance carrier is saying, then Chad Kessing doesn't have coverage. Neither do any other employees because they never had any communications with the insurance company. They never, the mechanic never changed his position or relied on anything that was said. All the conversations were had between the insurance carrier selling the policy and the business owner who was buying the policy. And this exact fact circumstance has been looked at by the South Carolina Supreme Court. And we have cited that in our brief. One is the Jost opinion and the other is the Pitts v. New York Life Insurance. But in both of those cases you have a relationship, an insurance contract relationship. And I think in Jost it went on for, what, 16 years. And what I'm concerned about from your perspective is how you explain the absence of any law applying equitable estoppel where the parties have no preexisting contractual relationship. Because the whole concept of equitable estoppel as I understand it arises out of a fiduciary relationship. There's an obligation. You have a preexisting duty to that party and you fail in your obligation. So how, I don't think Pitts and Jost answer that question for you. And so could you tell me how you get beyond the absence of any preexisting relationship? And to answer your question specifically, under South Carolina law, equitable estoppel doesn't necessarily arise out of fiduciary duty relationship. It arises because of the conduct on behalf of the party to which estoppel applies. Okay. But listen to this language from Pitts. And this is at page 5, I think it's at 545. No, excuse me, 551. Pitts says, While an insurer may be stopped by its conduct or its knowledge from insisting upon forfeiture of a policy, the coverage or restrictions on coverage cannot be extended by the doctrine of waiver or estoppel. So Pitts is saying very clearly you cannot extend coverage or remove a restriction on coverage by equitable estoppel. And here we have a restriction on coverage. You can't transfer unless it's done in writing with our permission. And Pitts is saying you can't apply equitable estoppel to remove a restriction on coverage. So it seems to me that Pitts goes pretty squarely and strongly against you. I would respectfully disagree. And this is why. But I need you to refer to this language on 551. I will. I don't disagree. I don't disagree that estoppel cannot add additional coverage or bring within coverage something that is excluded under the policy. For example, the Campbell case, which is cited in the briefs was a district court opinion by Judge Floyd. And in that case, what happened was there was an issue over whether or not loss of use was covered by the policy. In that instance, the adjuster represented to the injured party that loss of use was covered. When, in fact, when you looked at the plain language of the policy, loss of use was not covered. And so applying the same rule in your question, the court said no, you cannot bring in through estoppel coverage for loss of use because the policy itself doesn't cover it. In this case. Did the policy exclude that? It didn't cover it. Right. But I'm asking you, was that a policy exclusion? I don't know the specific answer to that question. I just know that it wasn't covered. In this particular case, the lower court went through great lengths to arrive at the conclusion that coverage was not extended. And I, and I hope that that is clear in my argument, the policy number one and the policy number two, where the exact same policies, all the district court said was that the policy was transferred. Right. To the new owner because of your consent and your acknowledgement, but being the insurance carry, but using the language of pits, why didn't the district court in this case? Extend. The coverage and remove the restriction on coverage by employing the doctrine of estoppel. I mean, the court said you have no coverage and then I'm conducting a trial on estoppel, but effectively what the court did was to say because of estoppel, the provision against transfer, unless there's written consent is not going to be applied. And it says you, you can't, uh, you can't change coverage or restrictions on coverage by the doctrine of estoppel. The whole idea of not being able to create additional coverage by way of estoppel under South Cal law is premised under the fact that the courts won't insurers to know the risk that they are ensuring. And the lower court made a specific finding with regard to the risk involved was the exact same risk. For example, the second application that was submitted was the only application that was used to evaluate the risk. It indicated two things. Number one, that the business had been in business for two years and to that, that second application insured the exact same risk that the carrier had insured. It can't possibly be the case under South County law is it that if he had a policy that the prior owner had in the same rough circumstances that this, that had the provision, we, you, a subsequent person, Mr. English, you're only covered if we tell you so in writing and they were to take his premiums for 10 months. And at the end of the ninth month, there would be a car accident and they would go, we don't cover you because we haven't in writing told you you were covered. That wouldn't possibly stand in South Ghana, would it? Well, could they cancel his, could they cancel his policy for nonpayment? Yes. The same code section, the same code section that was cited to the court gives specific instances where the insurance carrier can cancel the policy. One, if there's a material misrepresentation to, if there's a non premium, nonpayment of premium. And therefore, I'm the third one is that there's a change in the material risk. And what's important is the lower court saw the insurance carrier in this case, sent Mr. to know a letter in January of 2010. There was a standard reservation of rights. Let me go back to my question. Yes, and then you can follow up with her question. But my point is not withstanding any language in that pits case, would any lawyer from South Ghana say on the scenario I laid out to you that the Supreme Court of South Ghana wouldn't say there was coverage. Now that looks like equitable estoppel. I think it would be equitable estoppel. It would be some kind of concept in which the court would go. No, no, no. You act as if there was coverage and you cannot now assert the fact there is no coverage because there wasn't a written acceptance of you. But that would, that would, that would look like there was an exclusion of the policy that the court was using equity to override. But wouldn't the court do that in South Carolina? They would. And actually in one of the cases cited in our brief, the, the South Carolina Supreme Court actually said that you don't even have to use equitable estoppel to arrive at the same conclusion. And they use the simple example of if you had a landlord tenant circumstance and the tenant stayed in the home for an extra week, although there's nothing in writing, obviously the landlord's entitled to an extra month, extra week's worth of rent based upon the party's conduct. And that's exactly analogous to what has happened here. And the first financial was still covering to know. So what you're saying then, because things could have happened after the business was transferred that could have incurred liability on to know, let's say to know created a negligent situation before he left. He left something that later blew up on the premises that he should have cleaned up some sort of toxic waste or something. So first financial was still covering to know. So you're saying that the policy under the theory of equitable estoppel obligated first financial to provide dual coverage to both to know and to English because to know still had exposure for anything that he had done while he owed the business, didn't he? Actually, as the lower court pointed out, English was an insured under the first policy because he was an owner. There was a buyout situation happening. And what happened was insurance company got a premium on the first policy. They got premium on the second policy. And if you think about the equities amongst the parties in this case, if the lower court should be affirmed, which would do the following, the insurance company would have to ensure the precise risk. It chose to underwrite and accept premiums. Let's go back to Judge Kenan's question though first. And I think she may be right that there was some continued coverage on to know from perhaps for something he'd done during the operation before he knew that he had ceased his garage operations, their insurance risk and their coverage wasn't the same as it was before they knew that, was it? It wasn't. And that was pointed out by the lower court. Lower court because he sort of said they're disingenuous to suggest that. I'm talking about not just Kenan, the insurance company to suggest that because they aren't covering the full risk still there. Isn't it true too? They didn't have to issue two policies. Couldn't they just have said to English, you are not covered. You have no coverage here, although it's reasonable for you to think you're covered. We want to make it very clear to you, you have no coverage and didn't miss Y say based on her experience. And this was a fact finding by the trial below. The court said, miss Y said based on my experience and dealing with that company, if they had any questions, they would have called me so that, but they could have called. And she said, had they called me, I would have rushed and got another policy. That's right. And the, and the other point is, is that if what they say is true, then what the insurance carrier would have done would have been to cancel the first policy and start the new policy effective. How, how could they cancel the first under 38 75 dash 50. But under, as I understand it under the policy, the first named insured was the only entity that had the authority to cancel or transfer it. And there had to be 30 days notice. And the 30 days notice would have covered the period in question. If Mr. Dino had wanted to cancel the policy, like they say, then what would have happened would have been the insurance carry would have canceled the policy and notify the parties. That's precisely my point. He only Mr. Dino could cancel the policy and any cancellation for non-payment of premiums, which didn't happen here anyway, would require notice. 30, 30 days notice. They would have to be noticed, but that wouldn't affect the actual coverage, whether or not it existed in, in what the lower court pointed out was that Mr. English during Mr. Dino's policy paid the last premium with a check signed by Mr. English. Correct. Correct. But there he, but Mr. English could not had no authority to either transfer or cancel. I disagree with that. The policy clearly could be transferred. And that's what the lower provision is. Only the first named insured may cancel the part policy. And that's Dino. What the lower court said was that there was a transfer based upon the conduct of Mr. Dino, the insurance carrier and Mr. English. And the only thing I was pointing out was that if what the insurance carrier said is true, then they would have started the second policy. The minute they say the first policy was canceled. But in reality, what they did was they started the second policy the minute, because it was renewal, not a cancellation. The minute that the first policy expired. Thank you very much. Thank you. Mr. Barrow, you save some time. Your honor. In response to. Several points made one. I think judge Duncan, you're exactly correct. The policy could, could only be transferred via written request or canceled by Mr. Dino. That did not take place. You're not saying the policy was canceled. Oh, absolutely not. You're saying the coverage was extended. Coverage was extended. But the coverage wasn't extended in full. Why not? Because there was no garage operation by Mr. Dino to be insured. But, but, but here's, but here's the point. Just answer that question. Y'all weren't insuring the same risk from may the second, because you knew. The doing business as, and this was a garage policy. Y'all were not insuring the same risk. After may the second. That you were insuring up to may the second. We didn't know that. You knew it on may the second. No, here's, here's what we knew on may. So let's answer this. If you knew on may the second, that Dino had stopped his garage operations. Your insurance company. And in fact, if he had stopped his insurance, which we know factually he had. Okay. The insurance coverage y'all are offering is not the same. You aren't covering the same risk. Isn't that correct? Well, here's why I differ with that. No, you say it's incorrect. Well, he could have walked across the street and opened up another business under Gary Dino. Same business. Gary Dino, DBA, Wholesale Transmissions. And because he's the individual named under that policy, and that policy hadn't been canceled, that policy would still go with him. We didn't have any of that information. That policy, though, had an address. It did. It did have an address. But, but you can still transfer insurance. I mean, the policy could go with him, but simply because he had a new dress doesn't mean the policy wouldn't go. Now, the risk. You're saying, you're saying the status is the dress, the address you give for an insured site to an insurance company doesn't matter? No, I'm not saying it doesn't matter. It doesn't matter. I think you had a pretty good argument until you said that. Well, it wouldn't be in and of itself a prohibited factor. I mean, then you'd have to go research cases, whether just the mere change of address ends up affecting the risk. I think what you're saying is the policy would follow the first-named insured, which is the only party under the policy who could control it. It is. And I think you better stop there, because the longer you go on, the worse it gets. Well, keep on going. Okay. Mr. McLeod said if he had any extra time, he'd give it to you. I appreciate that. But it clearly is the case if an insurance company is informed that the name insured, and it's not just the name insured, it's the name insured doing business as some company, and it was a garage policy. You weren't insuring Gary Duneau for anything and everything he did in life. We were not. It was his operation of that transmission company. That's correct. And what risk you were insuring, if he was not working as a transmission company, it wasn't the same risk, was it? Well, potentially not, Your Honor. But the point I guess I'm making is the policy is still in full force in effect. Well, the policy is still there. Let me ask you this question. Yes. But even if you didn't transfer the policy, if you assume for a second that you had a duty to do something under superior knowledge in that situation, okay, do you know that case about the transmission lines, the Southern Development case in South Carolina, in which somebody, I'm going to give you the rough facts, because you might remember, somebody wants to buy a property, and so they contact the transmission line or the people who had the property and say, you had those transmission lines running through the property. We don't really like that. Can you bury those lines? And they go, oh, yeah, you can bury those lines. What they knew was they were about to put in new lines that could not be buried, and the court held that they had a duty with their superior knowledge to inform the potential purchase. I sort of see that similar to this case. You may not see it this way, but if the insurance company has superior knowledge, which is, everybody, it's reasonable for a person to think that Mr. English is getting coverage right now, but we know our superior knowledge is that he is not getting it. Does that, if that did create some obligation to act, without canceling the policy, couldn't they have merely informed English? No cancellation of the policy. Just inform me you don't have coverage. Well, again, you asked that question earlier, and I appreciate that. The answer is, obviously, yes, they could have done that, but I think that presupposes certain things that are not in this record. Well, they have, just under the situation I gave you, which I think is in the record, they thought it was reasonable for him to think he had coverage, and they knew, your client knew he did not have coverage. What more do you need now hypothetically? Because we couldn't have transferred the policy. This is about transferring the policy. I didn't ask about transferring. I was saying could you have said, no, the transfer on the policy is just a response to you not living up to a duty that you had or an obligation that you had. See, I don't see it as a duty on First Financial's part. Under the case law of equitable stopper, we did not have a duty. I mean, what I understand the court to say is, because Mr. Dent testified that it's reasonable to assume that Mr. English felt like he had insurance coverage, that when we received that fax, we then had a duty to tell Lee Ann Wise that English did not have insurance coverage. And I guess under the facts of this case, again, you're talking about the doctrine of reasonable expectation, which I do not think applies. That was speculation on Mr. Dent's part, as he clearly said afterwards. It wasn't speculation. It wasn't speculation whether or not it was reasonable. He said it was speculation as to for him to guess what English personally thought. That's what he said was speculation. All right. I agree with that. Okay. Thank you. I'll give you 10 seconds. Well, thank you. Just to sum up, it is our position that there is no standing to assert equitable stopper. You can't expand coverage by utilizing the doctrine of equitable stopper. This does not fit the tenets of equitable stopper by silence, as expressed by South Carolina law. In essence, the court has taken a doctrine and expanded it to create coverage. Thank you very much. Thank you very much. We'll step down.
judges: Dennis W. Shedd, Allyson K. Duncan, Barbara Milano Keenan